UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

STEFAN BUCK,

    Defendant.

-------------------------------------------------------X

MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR A PRELIMINARY
INSTRUCTION ON THE
QUALIFIED INTERMEDIARY
AGREEMENT

13-CR-00282(VM)

## MEMORANDUM OF LAW

Defendant Stefan Buck requests that as part of the Court's standard preliminary instructions at the inception of the trial, that it advise the jury that due to a Qualified Intermediary Agreement in effect between the Internal Revenue Service ("IRS") of the United States and Bank Frey, Bank Frey and its personnel did not break U.S. tax law by opening and maintaining accounts for U.S. persons even if such U.S. persons did not disclose these accounts to the IRS. The specific instruction requested will be set forth below. A specific instruction on this point is required at the outset because otherwise jurors will be confused as to the import of the evidence as the trial is progressing.

### Bank Frey's Agreement with the IRS

On May 10, 2002, the predecessor to Bank Frey, First Zurich Private Bank, entered into a Qualified Intermediary Agreement ("QIA") with the IRS. By its terms, the QIA was in effect commencing on January 1, 2002 and "shall expire on December 31 of the fifth full calendar year in which this Agreement first takes effect," see Original QI Agreement, Sec. 11.01, p. 55, attached as Exhibit 1. This date is calculated to be December 31, 2007.

1

On March 9, 2007, a Renewal was signed extending the terms of the initial QI Agreement from January 1, 2008 through December 31, 2013. (The Renewal Agreement is attached as Exhibit 2). Therefore, Bank Frey had a QI Agreement with the IRS at all times relevant to the Indictment, which was returned on April 16, 2013.

## Background

By agreeing to the QI, the U.S. Government clearly contemplated and accepted that U.S. taxpayers would open and maintain bank accounts in Swiss banks, including in Bank Frey. Furthermore, the U.S. Government contemplated and accepted that Swiss banks signing the QIA would not disclose those accounts maintained by U.S. persons unless the U.S. person held U.S. securities. In other words, the U.S. Government accepted that if a U.S. person opened or maintained a Swiss account, that the Swiss bank could legally open and maintain that account without disclosing it to U.S. authorities. However, if the account held U.S. securities, the account would have to be disclosed to the IRS.

Because the U.S. Attorney in this case appears to suggest that Stefan Buck acted in violation of U.S. law merely by allowing a U.S. person to open or maintain an account at Bank Frey, it is critical that the jury be informed at the outset that these actions alone cannot amount to criminal conduct. The jury should be given this charge prior to the admission of evidence so that the jury can better assess the evidence at the trial. For this reason, we ask that as part of the Court's preliminary instructions, that it instruct the jury as set forth below.

## The Proposed Charge

The Proposed charge is as follows:

Between January 1, 2002 and December 31, 2013, the Internal Revenue Service (also known as the IRS) had entered into an Agreement with Bank Frey called the Qualified Intermediary Agreement (also known as QI Agreement). In the QI Agreement, the IRS recognized that because Bank Frey is a Swiss bank, the bank and its personnel are

2

prohibited by Swiss law from disclosing the names of the bank's U.S. customers to the IRS.

Recognizing this prohibition of Swiss law, the IRS agreed that Bank Frey was not required to disclose U.S. customer accounts to the IRS. Rather, Bank Frey was required to disclose to the IRS only those U.S. customers who held U.S. securities, stocks or bonds in their accounts. However, Bank Frey was not required to disclose accounts for U.S. customers who did not hold U.S. securities, stocks or bonds in their accounts. In this way, Bank Frey would not violate Swiss law by disclosing the names of U.S. customers who had U.S. securities, stocks or bonds in their accounts without their authorization.

In instances where a U.S. customer did not authorize Bank Frey to disclose his or her name to the IRS, it is the legal obligation of the U.S. customer to declare his or her foreign account to the IRS. It is not an obligation of Bank Frey.

The QI Agreement further provides that if any U.S. customer of Bank Frey elected not to have his or her identity disclosed to the IRS, Bank Frey should ensure that such U.S. customer did not have any U.S. securities, stocks or bonds in their accounts.

In sum, under the QI Agreement between the Internal Revenue Service and Bank Frey, it was legal for Bank Frey and its personnel to maintain and to not declare to the IRS those accounts of U.S. persons which did not hold U.S. securities, stocks or bonds.

There is precedent for this instruction in another case involving a Swiss banker charged with defrauding the IRS. Specifically, in the case United States v. Raoul Weil, Case No. 08-CR-60322-JIC (Southern District of Florida), involving a former UBS banker charged with the same offense as Mr. Buck here, the trial judge granted the defendant's motion for a similar preliminary jury instruction to the one proposed by Mr. Buck. At the inception of the case, and as part of its general instructions, the trial judge provided an instruction to the jury that was virtually identical to the instruction requested above. See United States v. Raoul Weil, id. Transcript, attached as Exhibit 3, pages 18-19.

As was found by Judge Cohn in the Weil case, the role of the QI Agreement is sufficiently important and susceptible to confusion that there should be a specific reference to it during the Court's preliminary instructions. As a general matter, Courts often provide the jury with substantive preliminary jury instructions where these instructions provide appropriate

3

context and will aid in the fact-finding process. See generally United States v. Stein, 429 F.Supp.2d 648 (SDNY 2006); United States v. Cinergy Corp., 2008 WL 533755 (S.D. Ind).

Therefore, based on the foregoing, the defense requests that as part of the Court's preliminary instructions to the jury, that the Court deliver the charge set forth above.

Respectfully submitted,

Marc Agnifilo
Of Counsel
Brafman & Associates, P.C.
767 Third Avenue
New York, New York 10017
(212) 750-7800

To:    All counsel (via ECF)