UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA
:
      - v. -
:  13 Cr. 282 (JSR)
STEFAN BUCK,
:
             Defendant.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE TO KROVATIN KLINGEMAN LLC'S MOTION TO QUASH ATTORNEY SUBPOENAS


                                                        JOON H. KIM
                                                        Acting United States Attorney for the
                                                         Southern District of New York
                                                         One St. Andrew's Plaza
                                                         New York, New York 10007

Sarah E. Paul
Won S. Shin
Assistant United States Attorneys
     -Of Counsel-

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
                                                                :
UNITED STATES OF AMERICA                                        :
                                                                :
            - v. -                                              :   13 Cr. 282 (JSR)
                                                                :
STEFAN BUCK,                                                    :
                                                                :
                       Defendant.                               :
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
```

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to third party Krovatin Klingeman LLC's motion to quash the trial subpoenas served on Henry E. Klingeman and Helen A. Nau (the "Attorney Subpoenas"). As discussed herein, the Attorney Subpoenas seek extremely limited, non-privileged testimony from Mr. Klingeman and/or Ms. Nau with regard to certain document productions made by their firm, Krovatin Klingeman LLC (the "Firm"), to the U.S. Attorney's Office for the Southern District of New York (the "Office"). Specifically, all the Government seeks to establish through this testimony is that on particular dates, the Firm produced copies of board meeting minutes (the "Board Meeting Minutes") and draft translations of portions of the Board Meeting Minutes to the Office on behalf of the Firm's client, Bank Frey & Co. AG ("Bank Frey"). The purpose of the testimony is to establish the authenticity of these documents under Federal Rule of Evidence 901, i.e., that the Board Meeting Minutes are what they appear to be. The Government currently has no other means of establishing the authenticity of these documents, because the Government does not have subpoena power over Bank Frey, the bank has declined to make any witnesses available to testify voluntarily, and the defense has thus far been unwilling to stipulate to the documents'

2

authenticity. The Attorney Subpoenas, accordingly, are appropriate, and there is no valid basis upon which to quash them.

## FACTUAL BACKGROUND

The Indictment in this case charges Stefan Buck ("Buck" or "the defendant") with conspiring with others to ensure that U.S. taxpayers could hide millions of dollars in offshore accounts from the taxation authority of the United States, the Internal Revenue Service (the "IRS"), via false and fraudulent federal income tax returns. As alleged in the Indictment, Buck engaged in this conspiracy in his capacity as Head of Private Banking at Bank Frey, which was a private Swiss Bank. (Indictment ¶ 6.) The Indictment alleges that during the time period when Buck was committing this crime, the number of U.S. taxpayer-clients at Bank Frey increased astronomically, despite the admission of Swiss bank UBS AG ("UBS") that it had participated in a scheme to defraud the IRS in connection with its U.S. taxpayer-clients, and the indictment of Swiss bank Wegelin & Co. ("Wegelin") for conspiring with U.S. taxpayers to defraud the IRS, to evade taxes, and to file false tax returns. (*Id.* ¶ 8.) Indeed, between approximately February 2009 and February 2012, the number of Bank Frey clients who were U.S. taxpayers grew by approximately 300 percent, and by on or about September 30, 2012, nearly half of Bank Frey's total assets under management were held on behalf of U.S. taxpayers living in the United States. (*Id.* ¶¶ 7, 8.) Bank Frey, in short, saw the enforcement actions against others as a business opportunity for itself, and developed a list of justifications for the notion that Bank Frey, unlike other Swiss banks, could support tax evasion on the part of U.S. clients without being caught. Buck, along with others at Bank Frey, then proceeded to take in one undeclared U.S. account after another.

Many of Bank Frey's manufactured justifications for its decision to support U.S. tax evasion appear in the Board Meeting Minutes, which, along with certain other Bank Frey-related materials, were produced by the Firm to the Office on January 15, 2013. (*See* Exh. A., Cover Letter of Jan. 15, 2013.) Draft translations of portions of the Board Meeting Minutes were subsequently produced by the Firm to the Office on February 12, 2013 and March 28, 2013, respectively. (See Exh. B., Cover Letter of Feb. 12, 2013; Exh. C, Cover Letter of Mar. 28, 2013.) The Board Meeting Minutes, among other things, illustrate the fact that Bank Frey saw the flight of undeclared U.S. assets from other banks as a business opportunity for itself, and created a plan for how to hold itself out as a bank in Switzerland where such undeclared assets could still find a home. The Board Meeting Minutes thus contain material that is plainly relevant to this case. Moreover, the Board Meeting Minutes also contain co-conspirator statements that were made during and in furtherance of the conspiracy with which Buck is charged; thus, the Government intends to seek to introduce certain excerpts from the Board Meeting Minutes as non-hearsay, under Rule 801(d)(2)(E), once the authenticity of the documents been established under Rule 901.

If Bank Frey were located in the United States, the Government would likely have sought testimony about the Board Meeting Minutes through a witness from Bank Frey, whose attendance the Government would have secured at trial through the issuance of a trial subpoena. Here, however, the Government does not have subpoena power over Bank Frey, and Bank Frey has refused to provide a testifying witness – even a purely custodial witness – voluntarily. (*See* Exh. D, Email from Bank Frey's counsel, dated July 21, 2017, confirming that the bank "declines the request to authenticate records" at Buck's trial.) Accordingly, on October 3, 2017, the Government served the Attorney Subpoenas on Mr. Klingeman and Ms. Nau, with the intent

4

of calling either or both of them as witnesses to testify on the very limited points that: (1) the Firm produced certain materials to the Office on behalf of Bank Frey; (2) the Firm produced those materials to the Office on January 15, 2013, February 12, 2013, and March 28, 2013, respectively; and (3) the materials included the Board Meeting Minutes and draft translations of portions of the Board Meeting Minutes. On October 5, 2017, the Government had a telephone conference with a representative of the Firm, during which the Government endeavored to explain the narrow purpose of the Attorney Subpoenas. This motion ensued.[1]

## ARGUMENT

The Attorney Subpoenas were issued in full compliance with Federal Rule of Criminal Procedure 17. *First*, the testimony sought by the Attorney Subpoenas is relevant, as it pertains to the authentication of relevant documents that were previously produced to the Office, and that contain statements that the Government will seek to introduce at trial as non-hearsay. *Second*, the re-production of the documents by the testifying witnesses is necessary, to ensure that the witnesses can identify the documents shown to them during their testimony as the same documents that the Firm had previously produced to the Office. *Finally*, the Attorney Subpoenas are not unreasonable or oppressive. They seek very limited testimony, none of which would be privileged or raise policy concerns, and without which the Government currently has no way of authenticating the documents in question. Moreover, the Attorney Subpoenas do not seek testimony concerning any materials that were produced pursuant to Federal Rule of Evidence

---

[1] On October 20, 2017, after filing the motion, Mr. Klingeman suggested to the Government that he would withdraw the grounds of the motion to quash other than the argument premised on Federal Rule of Evidence 410. Because the motion is pending, however, and the other arguments made in the motion have not been formally withdrawn by the Firm, the Government is responding briefly to all of the arguments herein.

410; regardless, even if they did, Rule 410 would not apply here, because Bank Frey is not a defendant in this case. Accordingly, the motion to quash should be denied.

### A.     The Testimony Sought by the Attorney Subpoenas is Relevant

As discussed above, the Board Meeting Minutes are relevant to showing that Bank Frey saw the flight of undeclared U.S. assets from other banks as a business opportunity for itself, and proceeded to craft a plan to take in those assets. (*See* Indictment ¶¶ 7, 8.) Buck was the Head of Private Banking at Bank Frey during this time period, and the Indictment alleges that he committed the crime charged while he was working in that capacity. (*See id.* ¶ 6.) Thus, the Board Meeting Minutes are plainly relevant to this case. As noted above, the Government also believes that excerpts of the Board Meeting Minutes are admissible as non-hearsay, under Rule 801(d)(2)(E), because they are statements made during and in furtherance of the conspiracy by co-conspirators of Buck's. *See, e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 501–02 (5th Cir. 2011) (meeting agendas and minutes were designed to be in furtherance of the common goals of the Palestine Committee, which was established to support Hamas from abroad). For instance, the Board Meeting Minutes reflect that on November 26, 2008, one of Buck's co-conspirators suggested that Bank Frey "should be able to profit" from "the business opportunity with US-American clients which are, in part, not welcome anymore at the large institutions" because Bank Frey is "a solely Swiss private bank without foreign branches in the US." Before the Government can seek to admit any excerpts from the Board Meeting Minutes as non-hearsay, however, the Board Meeting Minutes must first be established as authentic under Rule 901.[2] For that reason, the Attorney Subpoenas, and the testimony sought by the Attorney

---

[2] Although the Board Meeting Minutes may also be business records, the Government does not intend to attempt to lay the foundation for the business records exception to the hearsay rule through either Mr. Klingeman or Ms. Nau. Nor does the Government intend to ask either Mr.

Subpoenas, are necessary.

      **B.**    **The Re-Production of the Materials is Necessary to Ensure that the Materials Can Be Authenticated by the Witnesses**

In addition to seeking the testimony of Mr. Klingeman and Ms. Nau, the Attorney Subpoenas ask the witnesses to bring copies of the documents that the Firm previously produced to the Office on January 15, 2013, February 12, 2013, and March 28, 2013, respectively, along with the cover letters from the Firm that accompanied these document productions. The reason for this request is simple: the Government is seeking the re-production of the documents by the testifying witnesses to ensure that the witnesses can identify the documents shown to them during their testimony as the same documents that the Firm previously produced to the Office. The witnesses may not be able to recognize the documents in the Government's possession as the ones that the Firm previously produced. In light of the fact that the sole purpose of this testimony is to authenticate the documents under Rule 901, the request to re-produce the documents is necessary and appropriate.[3]

      **C.**    **The Attorney Subpoenas Are Not Unreasonable or Oppressive**

Finally, the Attorney Subpoenas are neither unreasonable nor oppressive. As explained herein, they do not seek any information that would be covered by the attorney-client or work product privileges. The testimony that the Attorney Subpoenas call for, again, would be limited to a few non-privileged and uncontroversial points, namely, that: (1) the Firm produced

---

Klingeman or Ms. Nau any substantive questions about the contents of the Board Meeting Minutes, which are relevant on their face and do not require additional explanation to establish their pertinence to this matter.

[3] To the extent, of course, that Mr. Klingeman or Ms. Nau are willing to speak with the Government prior to their testimony, and can confirm their ability to authenticate the copies of the documents that are already in the Government's possession, the re-production of the documents may not be necessary.

certain materials to the Office on behalf of Bank Frey; (2) the Firm produced those materials to the Office on January 15, 2013, February 12, 2013, and March 28, 2013, respectively; and (3) the materials included the Board Meeting Minutes and draft translations of portions of the Board Meeting Minutes.  Asking the witnesses to bring copies of the documents, moreover, is plainly not an effort to violate the attorney-client privilege, nor could it violate the privilege, because all of these documents have already been produced by the Firm to the Office.  For these reasons, the Attorney Subpoenas easily fall within the Guidelines set forth in the U.S. Attorneys' Manual, which specify that subpoenas to attorneys "do not raise concerns regarding the potential application of the attorney-client privilege or the potential for negative impact upon the attorney-client relationship" if the subpoenas seek only "[i]nformation or materials provided by a client to an attorney for the purpose of disclosure to third parties, including information or materials provided for disclosure in bankruptcy proceedings, tax filings, immigration proceedings, or similar matters and transactions."  (*See* U.S. Attorneys' Manual § 9-13.410 (D)(2)(b).)  The Attorney Subpoenas, which seek no more than that, raise no policy concerns in this case.[4]

Moreover, Federal Rule of Evidence 410 does not provide a legal basis for quashing the Attorney Subpoenas.  *First*, although the Firm contends that "[t]he documents were provided to the USAO-SDNY by agreement pursuant to FRE 410" (*see* Mem. of Law in Supp. of Motion to Quash at 5), that is not actually the case.  In the cover letters that accompanied these

---

[4] Furthermore, the Guidelines "are set forth solely for the purpose of internal Department of Justice guidance.  They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal, nor do they place any limitations on otherwise lawful investigative or litigative prerogatives of the Department of Justice."  U.S. Attorneys' Manual § 9-13.410(F); *see also United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (holding that U.S. Attorneys' Manual Guidelines merely "reflect executive branch policy judgments" and "provide no substantive rights to criminal defendants").

documents productions – on January 15, 2013, February 12, 2013, and March 28, 2013, respectively – there was no reference to the documents having been produced pursuant to Federal Rule of Evidence 410. (*See* Exhs. A-C.) In contrast, in a cover letter accompanying a May 14, 2013 production, which the Firm also made to the Office on Bank Frey's behalf, the Firm stated that the May 14, 2013 production – which included a confidential written presentation to the Office that was drafted in the context of plea discussions – was being provided to the Office "[p]ursuant to Rule 410(a) and Rule 408 of the Federal Rules Evidence." (*See* Exh. E, Cover Letter of May 13, 2013.) The reason for the differing treatment of the productions by the Firm is readily apparent – while the May 13, 2013 production contained various statements made by their client in the context of plea discussions, the earlier productions were simply productions of materials that were already in Bank Frey's possession. Simply put, the Board Meeting Minutes are preexisting bank documents, rather than "statement[s] made during plea discussions," as contemplated by Rule 410, and Rule 410 does not apply to them.[5] *See* Fed. R. Evid. 410(a)(4).

*Second*, even if Rule 410 did apply to the Board Meeting Minutes, it still would not preclude the Government from introducing excerpts from the minutes at the trial against Buck. That is because Rule 410, by its terms, provides only that information covered by the rule "is not admissible against the defendant who made the plea or participated in the plea discussions." *See* Fed. R. Evid. 410(a). Here, the prospective defendant who participated in the plea discussions was Bank Frey – it was not Stefan Buck. Since the trial defendant, Buck, did

---

[5] With regard to the draft translations of the Board Meeting Minutes, which were also produced by the Firm, the Government intends to abide by our agreement to treat them as drafts and to refrain from using them to conduct any examinations of any witnesses or to impeach or call into question the accuracy of any final translations. (*See* Mem. of Law in Supp. of Motion to Quash at 6.) We also intend to have any draft translations of the Board Meeting Minutes certified by an independent translator prior to seeking to introduce them at trial.

not participate in the plea discussions, Rule 410 would not preclude the introduction of any of these materials against him at his trial. *See United States v. Testa*, 33 F.3d 747, 751 (7th Cir. 1994) (Rule 410 did not preclude admission of coconspirator's statement against the defendant because the defendant did not participate in the coconspirator's plea discussions). In other words, since Bank Frey is not a defendant in this case or at this time, Rule 410 is simply inapposite.

## CONCLUSION

For the foregoing reasons, the motion to quash should be denied.

Dated:     New York, New York
           October 23, 2017

>                       Respectfully submitted,
>
>                       JOON H. KIM
>                       Acting United States Attorney
>                       Southern District of New York
>
>
> By:     __/s/_____
>         Sarah E. Paul
>         Won S. Shin
>         Assistant United States Attorneys
>         (212) 637-2326/2226