USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/30/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA       :
                               :
     -v-                       :     13 Cr. 282 (JSR)
                               :
STEFAN BUCK,                   :     MEMORANDUM ORDER
                               :
                Defendant.     :
------------------------------------X

JED S. RAKOFF, U.S.D.J.

By indictment dated April 16, 2013, defendant Stefan Buck was charged with conspiring with co-defendant Edgar Paltzer and various United States taxpayers to evade and defeat United States income tax obligations and to prepare false tax returns and other documents. See Indictment, Dkt. No. 1. In advance of the trial, scheduled to commence October 30, 2017, the parties have briefed several motions in limine, see Dkt. Nos. 81, 82, 85, upon which the Court hereby rules, as follows:

## I.  BUCK'S MOTION IN LIMINE

At all times relevant, Buck was an employee of Bank Frey, a Swiss Bank. Buck seeks a preliminary instruction advising the jury that, because of a Qualified Intermediary Agreement ("QI Agreement") entered into between Bank Frey and the U.S. Internal Revenue Service ("IRS") beginning in May 10, 2002 and continuing until December 31, 2013,[1] Bank Frey and its personnel did not

---

[1] The Court notes that the QI Agreement was initially entered into by the predecessor to Bank Frey, First Zurich Private Bank, and was subsequently renewed by Bank Frey. See Dkt. Nos. 82-1, 82-2.

1

violate United States tax laws "by opening and maintaining accounts for U.S. persons, even if such U.S. persons did not disclose these accounts to the IRS." Dkt. No. 82, at 1. Specifically, Buck requests an instruction explaining that "Bank Frey was not required to disclose accounts for U.S. customers who did not hold U.S. securities, stocks or bonds in their accounts[,]" and that it was "not an obligation of Bank Frey" to disclose accounts without such securities, stocks, or bonds to the IRS, but rather of the U.S. customers. Id. at 3.

Buck argues that such an instruction is necessary "[b]ecause the [Government] in this case appears to suggest that Stefan Buck acted in violation of U.S. law merely by allowing a U.S. person to open or maintain an account at Bank Frey[.]" Id. at 2. The Government denies any such suggestion.

The Court finds that the proposed preliminary instruction is unwarranted. Importantly, as Judge Marrero noted in a prior order in this case,[2] "the Indictment does not allege that Buck [conspired to defraud the United States] because he failed to disclose the names of his clients to the IRS." Order dated August 28, Dkt. No. 75, at 21. Nor does it allege that Buck "violate[d] U.S. tax law merely by servicing an account held by a U.S. person who fails to report that account[.]" Dkt. No. 91, at 2. "Rather, the Indictment

---

[2] This case was reassigned from Judge Marrero to the undersigned on October 12, 2017.

2

charges that Buck made many statements and took several actions in furtherance of a conspiracy to evade the obligations of United States taxpayers[.]" See Order dated August 28, at 21-22.[3] Moreover, the Court finds that the proposed preliminary instruction is likely to cause confusion, rather than reduce it, by raising at the outset issues not central to the alleged conspiracy or even mentioned in the Indictment. Accordingly, Buck's motion in limine for a preliminary instruction regarding the QI Agreement is denied.

## II. GOVERNMENT MOTIONS IN LIMINE

The Government makes six in limine motions, most of which are either premature or moot.

In its first motion in limine, "[t]he Government seeks a pre-trial ruling permitting it to offer in evidence at trial [Buck]'s proffer statements to rebut any inconsistent evidence offered, or arguments made, on behalf of [Buck], or to impeach any testimony

---

[3] Defendant relies on United States v. Raoul Weil, No. 08 Cr. 60322, Hearing Tr. (S.D. Fla. Oct. 14, 2014), where the district judge gave an instruction similar to the one requested here. However, the instant case is distinguishable from Weil, where the indictment addressed a similar QI Agreement between UBS bank and the IRS in the context of an alleged conspiracy, because there, the Weil prosecution represented to the court that the QI Agreement "play[ed] an important role" in the case. Weil, No. 08 Cr. 60322 (S.D. Fla. Aug. 4, 2014), Hearing Tr., at 8:17; see also id. at 8:15-9:7 (stating the Government's theory of the case that "the evidence will show that UBS . . . knew it couldn't comply with the Qualified Intermediary Agreement"). By contrast, the Indictment in this case makes no mention of the QI Agreement, nor does the Government argue that the QI Agreement plays an important role in the alleged conspiracy.

3

offered by [him]." Dkt. No. 85, at 4. However, the Government cannot yet know whether any inconsistencies or other issues will in fact arise or, if they do, which statements it will seek to admit. Accordingly, the Court will reserve a ruling regarding the admissibility of specific statements until such time, if any, that the Government moves during trial to admit particular excerpts from the proffer interviews.

The Government's second motion in limine seeks to admit certain newspaper articles from publications such as the New York Times and Reuters "regarding developments in the investigation of UBS and other Swiss banks[.]" Dkt. No. 85, at 6. The Government states that it does not intend to introduce the articles for the truth of the statements contained therein, but rather to show that Buck "could not have been ignorant of the fact that U.S. authorities were investigating and charging others in Switzerland . . . for similar conduct." Id. In other words, the Government seeks to admit such articles as non-hearsay evidence tending to show that Buck "was put on notice, at the time when he was committing this crime, that he was breaking U.S. law and faced potential prosecution in the United States." Id.

Buck argues that the Court should reserve judgment until the Government presents specific articles it seeks to admit, so that Buck may properly address them in turn. Buck further notes that if the Government presents evidence intended to suggest that Buck was

4

on notice of the illegality of his actions, then he will offer articles showing that he had strong reason to believe that his actions were legal.

Newspaper articles are ordinarily inadmissible hearsay if sought to be entered into evidence for the truth of the matter asserted therein. See Fed. R. Evid. 802; see also Jordonne v. Ole Bar & Grill, Inc., No. 13 Civ. 1573, 2016 WL 3409088, at *6 (S.D.N.Y. Apr. 26, 2016), report and recommendation adopted sub nom. Jordan v. Ole Bar & Grill, Inc., No. 13 Civ. 1573, 2016 WL 3360524 (S.D.N.Y. June 16, 2016)("[T]o the extent that Plaintiffs offer these articles for the truth of the matter asserted therein, they are inadmissible hearsay."); Holmes v. Gaynor, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004) ("The newspaper article, however, is hearsay and inadmissible for proving the truth of the matters asserted therein."). However, articles offered not for the truth of the statements made therein, but rather to show that a party had notice about a specific set of facts are sometimes admissible as non-hearsay evidence. See Ole Bar & Grill, No. 13 Civ. 1573, 2016 WL 3409088, at *6 (finding that articles offered "to demonstrate that Defendants were on notice of allegations of violence at their venue . . . [are] non-hearsay because they are not being offered for the truth of the matter asserted"), and Housing Works, Inc. v. Turner, No. 00 Civ. 1122, 2004 WL 2101900, at *4 (S.D.N.Y. Sept. 15, 2004), report and recommendation adopted

5

as modified, 362 F. Supp. 2d 434 (S.D.N.Y. 2005) (finding that weekly newsletters "cannot be defined as hearsay under [Federal] Rule [of Evidence] 801(c) because the plaintiff ha[s] not cited them to prove the truth of the statements they contain").

Whether the newspaper articles the Government seeks to place into evidence are admissible depends further upon the relevance of the specific articles and the likelihood the defendant would have read them. Accordingly, the Court will reserve ruling on the motion until the time, if any, that the Government seeks to introduce specific newspaper articles into evidence, at which time the Court will consider, inter alia, the specific content of the articles and the connection, if any, between the articles and the defendant.

In its third in limine motion, the Government seeks to admit, pursuant to Rule 807, Fed. R. Evid., the Bank Frey account records of "U.S. clients who maintained undeclared accounts" opened or managed by Buck. Dkt. No. 85, at 7. The reason for the motion is that Bank Frey refuses to supply a custodian of records to authenticate the documents. While the Government notes that it will introduce some of these records into evidence through the testimony of individuals with personal knowledge of the accounts (such as U.S. clients and beneficial owners of the accounts, as well as cooperating witnesses) who will be able to authenticate the records, the Government seeks to submit additional, similar account records from U.S. clients whom the Government does not

6

intend to call as witnesses, "primarily because their testimony – apart from their authentication of these records – would be largely cumulative and would unduly prolong the trial of this matter." Id.

Although the Court is not convinced that calling such witnesses would materially prolong the trial, the Government now represents that it expects that it will be able to authenticate these records following Rule 15 depositions currently underway. As both the Government and Buck ask the Court to defer its consideration of this motion until after those depositions are completed, the Court hereby reserves its ruling on this motion.

In its fourth motion, the Government seeks to preclude the defense from referring to the fact that Bank Frey and certain Bank Frey bankers were not criminally charged. Buck does not oppose the Government's motion. Therefore, it is granted as unopposed.

In its fifth motion, the Government seeks to preclude Buck from arguing that compliance with Swiss law, the QI Agreement, or Bank Frey policy equates to compliance with U.S. law. Specifically, Buck asserts that while "the defense does not intend to argue that if Buck was shown to have complied with Swiss law, the QIA, and with Bank Frey policy that he would then be in compliance with U.S. law," Dkt. No. 89, at 5, his "compliance with these principles absolutely shows, at a minimum, that he did not act willfully in conspiring to violate the tax laws . . ." Id. The Government, in turn, agrees that the defense may argue that "Buck believed that

7

he could satisfy U.S. law, or that he had no duty to follow U.S. law, if he complied with Swiss law, the Qualified Intermediary ("QI") Agreement, and/or Bank Frey policy[,]" "subject to appropriate limits, should the Court determine that jury confusion, undue delay, and the like outweigh the probative value of detours into Swiss law, contract terms, and bank policy." Dkt. No. 90, at 3. The latter limitations, however, are not before the Court at this time.

Accordingly, in as much as Buck agrees that compliance with Swiss law, the QI Agreement, and/or Bank Frey policy does not equate to compliance with U.S. law, the Court grants the Government's motion as unopposed.

In its sixth in limine motion, the Government seeks an order directing Buck to provide prompt notice of whether he plans to rely on the advice of counsel defense at trial, and if so, to turn over complete discovery relevant to such a defense, including all materials that might otherwise be subject to the attorney-client privilege. Buck previously represented to the Court that he would so advise the Government on or before October 9, 2017. As the Court is not aware of any indication that Buck has failed to comply with this representation, and October 9 has passed, the Court concludes that this motion is moot.

8

III. OTHER ISSUES

By letter dated October 27, the Government informed the Court that it had withdrawn its subpoenas of non-parties Henry E. Klingeman and Helen A. Nau and, by joint call the same day, Mr. Klingeman and Ms. Nau informed the Court of their intention to withdraw their motion to quash those subpoenas. Therefore, the Clerk of Court is directed to close docket entry number 96.

As these rulings conclude the pre-trial motion practice in this case, the Clerk of Court is further directed to close docket entry numbers 63, 73, 78, 81, 85, and 89.

SO ORDERED.

Dated: New York, NY
       October 30, 2017

JED S. RAKOFF, U.S.D.J.